# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF MISSISSIPPI
### GREENVILLE DIVISION

EZELL WASH, ET AL                                                      PLAINTIFFS

VS.                                              CIVIL NO. 4:00CV315-WAP-JAD

ROBERT JOHNSON, ET AL                                                  DEFENDANTS

## REPORT AND RECOMMENDATION

The plaintiffs filed a *pro se* complaint challenging the conditions of their confinement at the Mississippi State Penitentiary at Parchman. They have filed a complaint, amended complaint, and second amended complaint. There are also assorted replies filed regarding the defendants' claims of qualified immunity. The undersigned has reviewed the file and pleadings and makes the following observations and recommendations.

## PARTIES, PLEADINGS AND PROCEDURAL HISTORY

The plaintiffs challenge the conditions of their confinement in Unit 32 and Unit 17 at Parchman. The plaintiffs are self- identified as the money order inmates . They allege they were initially placed in Unit 32 as a result of their involvement in money order scams run out of Parchman. The plaintiffs remaining in this action are Bobby Caldwell, Desmond Earl Phillips, Jimmy Powell, Robert Price, James Reed, Richard Sims, Jr., Glendle Sones and Ezell Wash. In the second amended complaint the named defendants are Glenn Adams (inadvertently misidentified as Glenn Williams in the defendants' answer), James Anderson, Robert Armstrong, Walter Booker, Joe Connors, Gene Crocker, Christopher Epps, Frank Grammar, Larry Hardy, W. L .Holman, Maud Irby, Larry Keys, Earl Jackson, Levon Jackson, (also identified as Case Manager Jackson), Robert Johnson, then Commissioner of the Mississippi Department of Corrections, Pamela Lee, Jacquilyn Maxwell, (also identified as case manager Maxwell), Jessie Streeter, Charles Thomas, Willie

Walker, Sam Webb, (also identified as case manager Webb) and the defendants' insurers and bonding companies. Three defendants, Anderson, Booker and Holman, have apparently never been served with process.

## **THE PLEADINGS**

The second amended complaint retains the allegations of its predecessors and adds allegations regarding Unit 17. All defendants are alleged to have been acting under color of state law; to be employees of the Department of Corrections; and to have acted with deliberate indifference and intent. The complaint is largely silent as to the positions of the individual defendants. With the exception of Larry Hardy, it is completely silent as to what actions or omissions or personal involvement any of these defendants are alleged to have had in any constitutional violations. The undersigned's efforts over a period of years to get the plaintiffs to correct their pleadings by filing "*Shultea*" replies to the defendants' qualified immunity defenses, as will be discussed in some detail later, have been largely unavailing. [1]

The plaintiffs complaints are summarized as follows:

1.  The defendants violated the plaintiffs' Equal Protection and 8th Amendment Rights by:

    a.  Removing electric outlets from their Unit 32 cells for security reasons. Inmates had thrown scalding water on other inmates and guards;

    b.  But allowing death row inmates to keep their electric outlets;

    c.  The inmates need the outlets to use their fans for cooling themselves;

---

[1] The exception is Jimmy Powell. This plaintiff has filed an individual response where he has at least attempted to respond with factual specifics regarding what different defendants did or failed to do.

    d.  Unit 32 is not adequately cooled or ventilated in the summer months which is a risk to their health.

2.  The defendants violated plaintiffs' due process rights in not providing impartial classification hearings. The administration dictated that the money order inmates would remain housed on their designated tier in Unit 32 and the classification committees followed that edict. The allegations are contradictory in alleging that some other money order inmates had been released from close confinement and even from prison. Additionally, all these inmates were moved to Unit 17 shortly after the filing of this lawsuit.

3.  The defendants violated the plaintiffs' 8th Amendment rights:

    a.  By holding them in 'isolation' for more than 8 years;

    b.  Denying them yard call for one year;

    c.  Denying them adequate mental health care;

    d.  On transfer to Unit 17, denying them yard call five times a week.

4.  The defendants violated plaintiffs' state law rights and 8th Amendment rights:

    a.  By failing to properly heat Unit 32 and/or provide adequate warm clothing;

    b.  Exposing them to bodily wastes due to 'ping-pong' toilets;

    c.  Exposing them in Unit 17 to smaller vermin infested cells that lacked running hot water and were inadequately lighted and heated.

5.  That Larry Hardy has violated federal and state law by not providing adequate administrative remedies.

The plaintiffs initially sought injunctive and declaratory relief in their complaints. Since the equitable relief sought is the subject matter of the ongoing litigation in *Gates v. Cook*, 4:71CV6, the

undersigned on February 28, 2001, recommended that the case be forwarded to class counsel in *Gates* and consolidated with that case (Doc 22). The defendants moved to consolidate this action with *Gates* asserting correctly that all of the issues in *Wash* were addressed in *Gates*; the plaintiffs were class members in *Gates*; and the equitable relief in this case was sought pursuant to the provisions of *Gates* (Doc 48, 8/13/2001). The court entered its order consolidating *Wash* with *Gates* (Doc. 56, August 31, 2001). Thereafter, the plaintiffs filed a notice of voluntary dismissal of all equitable claims (Doc. 60). Based upon the dismissal of the equitable claims the court deconsolidated this case (Doc 61). Therefore, only claims for monetary damages remain before the court.

## **PROCEDURAL HISTORY**

The following is a time line of this case.

**November 15, 2000** - The initial complaint in this cause filed in the Southern District of Mississippi is transferred to this court (Doc 3).

**January 29, 2001** - The second amended complaint is filed (Doc 15).

**October 22, 2001** - The defendants' answer asserting qualified immunity (Doc 70). They file a motion to require the plaintiffs to reply to the immunity defenses pursuant to the procedure established in *Shultea v. Wood*, 47 F. 3d 1427 (5th Cir. 1995) (Doc. 71).

**November 2, 2001**- **the court orders *Shultea* replies**, specifically citing the case, and ordering that "each plaintiff shall separately file a detailed and specific reply to defendants' immunity defenses...." (Doc. 77). The response is due on December 1, 2001.

**November 27, 2001**- Plaintiffs object to the order. They say if the court grants their motion to strike the defendants' answer, their renewal of the second motion for default judgment and motion

to vacate the stay of discovery, the *Shultea* reply would be moot. The time to request reconsideration of the order or to appeal the order to the district judge has already expired before this objection is filed.

**November 28, 2001**- Plaintiffs file a motion for additional time to respond (Doc 87), claiming the defendants' failure to provide files makes it impossible to respond within the time allowed, but manage to file a motion for a temporary restraining order that same day.

**November 29, 2001**-  The court enters its order finding that the motion to vacate the stay and the original *Shultea* order will be denied.  The order specified: "This case has suffered from numerous pleadings which have delayed its movement, and some of the confusion as to the status of the case has been contributed by the court."  To clarify the situation the court requires the plaintiffs to file the *Shultea*  reply by January 2, 2002, and the defendants to file any motion to dismiss based upon the immunity defenses by January 18, 2002 (Doc. 89).

**December 7, 2001**-The plaintiffs file a motion to reconsider this order chastising the court for not lifting a discovery stay when the state did not file a motion to dismiss and accusing the court of not honoring its word (Doc. 90).

**December 10, 2001-** The December 7 motion for reconsideration is denied (Doc. 93).  The court then orders (Doc. 94) the plaintiffs' *Shultea* replies by January 4, 2002, and a motion to dismiss based upon immunity by February 1, 2002.  The order allows the plaintiffs to move to lift the stay if the motion to dismiss is not filed.

**December 14, 2001**-Plaintiffs move for additional time to appeal the December 10, 2001, order as an apparent attempt to appeal the original *Shultea* order from November 2, 2001 (Doc. 97).

**January 3, 2002**- The plaintiffs file a motion to strike the 3rd, 5th and 6th immunity defenses. The motion is ultimately granted, largely due to the plaintiffs' post-answer dismissal of official capacity claims. It does not address the federal qualified immunity defense.

**January 7, 2002-** The plaintiffs again alleging lack of access to legal files request additional time to file a *Shultea* reply.

**January 11, 2002**- Plaintiffs file a nine page motion seeking sanctions for denials in the defendants answer. The second amended complaint, the answer and multiple other documents are attached to the motion. The plaintiffs do not use this access to the legal files to draft a *Shultea* reply.

**January 22, 2002-February 7, 2002.** Plaintiffs file another motion to amend seeking to add a complaint about footwear and yet another motion for temporary restraining order, but no *Shultea* reply is filed.

**February 12, 2002** - As a sanction for the failure of the defendants to file a motion to dismiss, the discovery stay is lifted and discovery deadlines established (Doc. 117).

**March 1, 2002**- The undersigned files his report and recommendation noting that not one of the plaintiffs has filed a *Shultea* reply originally ordered on November 2, 2001 and due on January 4, 2002 (Doc. 119).

**June 13th 2002**- The district judge declines to dismiss since the motion for extension of time to file the reply had not been ruled on (Doc. 139). The order further set forth, "The plaintiffs may now consider themselves warned that any future delay in obeying this Court's orders may be considered contumacious conduct leading to swift sanctions including dismissal." The plaintiffs were granted 20 days in which to file the *Shultea* replies. The court also ordered at that time that each plaintiff would be sent copies of any of the court's orders from that point forward (Doc. 140).

**June 24, 2002**- The plaintiffs file to reconsider arguing that the immunity defense was moot because the magistrate had lifted the discovery stay or alternatively for additional time(Doc. 143). No Shultea reply is filed.

**July 2, 2002**- The June 24 motion for reconsideration is denied. The district judge notes the plaintiffs have had several months to comply with the court's order and in the absence of a showing of sufficient cause, no further extensions of time will be allowed (Doc. 147)(July 2, 2002).

**July 9, 2002**- When not one of the plaintiffs had filed their *Shultea* reply, a second report and recommendation is filed suggesting the complaint be dismissed for failure to comply with the orders of the court (Doc 148).

**July 12, 2002-** Plaintiffs file a "Response to Immunity Defense," claiming again that the immunity issue is moot and asserting that the motion to declare the defendants not immune was a sufficient reply (Doc. 150). As had been done repeatedly before plaintiffs claim that prison officials are denying access to legal files (Doc 151) as an excuse for failure to comply with the July deadline.

**July 22, 2002-** The plaintiffs file motions and responses arguing: 1) the defendants had not filed an immunity motion. (Ignoring the fact that the *Shultea* replies were to be filed first, and that the defendants were sanctioned for their failure when the stay of discovery was lifted.) (Doc 153). Plaintiffs demand the court vacate the *Shultea* order because of default by the defendants. This pleading also includes a brief on the law of qualified immunity. It does not set forth what personal involvement any named defendant had in alleged violations. The plaintiffs argue: 1) that the November order was wrong; 2) that their motion for extension of time stayed the order requiring a July response; 3) that the immunity issue was moot; and 4) that it was unlawful to require them to

respond to the immunity defense, (because the October 22, 2001 answer was not timely filed) (Doc. 154). No *Shultea* reply is filed.

**July 23, 2002-** The motion for more time to file *Shultea* replies is denied by the magistrate judge.

**August 7, 2002-** The plaintiffs move to void the magistrate judge's order asserting that the magistrate judge lacked authority to issue the order on the motion for additional time. No *Shultea* reply is filed.

**October 1, 2002-** No *Shultea* reply having been filed by any plaintiff the case is dismissed with prejudice (Doc. 158). Multiple motions for reconsideration are later overruled. No *Shultea* reply is filed.

**November 21, 2002-** Plaintiffs file their notice of appeal (Doc 163).

**September 21, 2004-** The Fifth Circuit Court of Appeals overturns the dismissal, finding that " in light of the plaintiffs' efforts to address the district court's order to file a *Shultea* reply, the availability of a lesser sanction, and the lack of prejudice to the defendants" that the Rule 41(b) dismissal would be vacated.

**January 11, 2005-**The court designates Desmond Phillips lead plaintiff and requires him to file an initial immunity response within 30 days with each plaintiff to file a supplemental response within 30 days thereafter (Doc.197).

**January 24, 2005** -Desmond Phillips objects to his designation(Doc. 202).

**February 17, 2005-** The plaintiffs file a supplemental reply (Doc. 207), complaining that they do not have the answer or other information with which to reply and objecting to Phillips as lead plaintiff.

**February 18, 2005**- An order is entered directing the clerk to provide each plaintiff with a copy of the answer, the *Shultea* motion and the original order requiring the replies. The order requires each plaintiff to file their *Shultea* reply by March 14, 2005 (Doc. 208).

**March 12, 2005** - The plaintiffs file a motion for a more definite statement or in the alternative a 'response to the immunity defenses.' They quarrel about the defendants' 'contumacious' conduct in failing to file a motion to dismiss. They contend that the immunity defense is not properly before this court. The plaintiffs assert that all material facts are unresolved and should be left to the jury for determination. It is a legal brief on the subject of qualified immunity. It is not a *Shultea* reply as it contains no factual allegations regarding the individual defendants.

**March 10, 2005**-The court denies the motion for a more definite statement.

> "The plaintiffs will be given one more opportunity to respond to the immunity defenses, but are warned that further meritless filings such as the one received on March 9, 2005 will be treated as a failure to prosecute and subject them to the imposition of sanctions, including the dismissal of this lawsuit.
>
> IT IS ORDERED that each plaintiff **individually and separately** shall **specifically** state exactly how and why he believes each individual defendant is liable to him in this lawsuit, exactly what actions of each individual defendant toward the individual plaintiff responding have made that defendant liable to the plaintiff under § 1983 and why these defendants are not subject to immunity defenses affirmatively pleaded...." (Emphasis in the original)

The replies are then due on March 31, 2005 ( Doc. 213).

**April 6, 2005**-The plaintiffs file a response asserting that the Fifth Circuit has deemed their pleadings sufficient and that the motion for a more definite statement was a response to the immunity defenses.[2]

---

[2] The Fifth Circuit opinion notes that whether the pleadings are sufficient to comply with the heightened pleadings requirement of *Shultea* has not been decided.

**April 7, 2005**- Jimmy Powell files his individual response to the immunity defense in which he makes allegations connecting individual defendants with various acts related to the procedures and conditions of the complaint. This is a timely response because he asked for and been granted an extension of time.

## FIRST RECOMMENDATION

The undersigned recommends that the above action be dismissed with prejudice for failure to obey the orders of the court as to all plaintiffs, (other than Jimmy Powell), hereafter referred to as the *Wash* plaintiffs. The *Wash* plaintiffs have exhausted themselves in defying the order to provide a factual reply. Significantly less work would have been required to comply with the court order than has been created for the plaintiffs and the courts by their determination to avoid the order.

The orders of a court must be obeyed, regardless of whether litigants believe the order is fair or correct. After any appeals or proper motions for reconsideration are exhausted, the order, right or wrong, becomes final. The court must be able to enforce its orders to control its docket ; to protect the legitimate interests of the parties; and to protect the system of justice. The court ordered the replies pursuant to the dictates of the Fifth Circuit Court of Appeals in *Shultea*. *Shultea* plainly sets out that this court's discretion to <u>not</u> order a reply is extremely limited, once the defendant raises qualified immunity as a defense. The order requiring the *Shultea* reply became final ten days after it was docketed or on or about November 12, 2002. The court has renewed the order repeatedly, including several times since the remand. In any litigation it invites chaos and prejudice to opposing parties and the system to allow parties to believe that they may side-step the orders of the court by a relentless stream of meritless motions and attacks on the courts. The responses filed by the *Wash* plaintiffs have presented time and time again their contentions that they either should not or cannot

be made to comply with this order of the court. They have endlessly renewed arguments repeatedly rejected. They have been told over and over again that they must comply with the order of the court; instructed on how to comply with the order; and provided with documents to assist them in complying with the order of the court. They have been granted multiple extensions of time. Their *pro se* status does not exempt them from compliance with the dictates of the court. The *Wash* plaintiffs' conduct appears to be in bad faith and contumacious. It is not a failure to comply, so much as a refusal to comply with an order.

The defendants initially raised their defense of qualified immunity in October, 2000. The undersigned is very much aware that the conduct of the defendants in this litigation has been less than sterling in complying with the orders of the court. The prejudice to the defendants from the long delay has been to a certain extent self-inflicted. Since the *Shultea* replies by order of the court were to precede the motion to dismiss, the primary blame for the long delay in this case rests upon the *Wash* plaintiffs. The parties are not, however, the only ones with an interest in this matter. The court also has an interest in the timely disposition of its business and the power to protect that interest, in various statutes, in the rules of the court and in the inherent power of the court. The inherent power of the courts emanates from the "control necessarily invested in courts to manage their own affairs so as to so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.* 501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed.2d 27(1991)(quoting *Link v. Wabash R.R. Co.,* 370 U.S. 626, 630-631, 82 S. Ct. 1386, 8 L. Ed.2d 734 (1962)).

The court has instructed the plaintiffs as clearly as it knows how to that it desired allegations of fact connecting, by personal involvement, the multitude of defendants to the plaintiffs' numerous complaints. Those allegations are still missing from the record. What little can be learned of

individual involvement is gleaned from attachments to miscellaneous motions, not from either a complaint or a *Shultea* reply. The plaintiffs to this date have failed to connect by factual allegations the individual defendants to their factual allegations about their conditions of confinement. The defendants have been continuously entitled to have this level of specificity. *Shultea v. Wood*, and *Elliot v Perez*, 751 F. 2d 1472(5th Cir. 1985). The case should be dismissed as to all plaintiffs, other than Jimmy Powell, as a sanction for their contumacious refusal to abide by the orders of this court, pursuant to Rule 41(b) and the court's inherent powers.

## <u>SECOND RECOMMENDATION</u>

Alternatively, and in addition to the First Recommendation, the undersigned recommends that the action be dismissed pursuant to 42 U.S.C.§ 1997e(e) and *Alexander v. Tippah County, Mississippi*, 351 F. 3d 626(5th Cir. 2003).

Under 42 U.S.C.A. § 1997e(e) "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury." See *Geiger v. Jowers*, 404 F.3d 371(5th Cir. 2005)(The requirement of a physical injury as a prerequisite to a claim for compensatory damages is not dependent upon the nature of the underlying constitutional claim; affirming the dismissal of a claim for First Amendment violations)**;** *Brown v. Hembest*, 2005 WL 1174661(N.D. Miss. 2005)(Pro se complaint alleging failure to prevent inmate on inmate violence dismissed partly due to failure to allege any physical injury); *Brown v. Sudduth*, 2005 WL 2406090(N.D. Miss. 2005) ("As ... Brown seeks only money damages, and as he has not alleged physical injury, his claims for compensatory damages must fail." *Id.* at 4.)

Additionally, the injury alleged must be more than *de minimus*. *Sigler v Hightower*, 112 F.3d 191(5th Cir. 1997). The plaintiffs allege they caught colds, contracted influenza and had body aches as a result of prison conditions. There are no allegations regarding any medical attention required by any plaintiff for any of these physical complaints. These alleged injuries are comparable to those that have been found by other courts to be *de minimus* injuries and not sufficient to support a claim for monetary damages. *Sigler v Hightower*, 112 F.3d 191(5th Cir. 1997)(a bruised ear that was sore and hurt for three days was held to be a *de minimus* injury). *Pitchon v Rosenthal*, 2005 WL 1503455 at 2 (S. D. Tex. 2005)(Claims for monetary damages for alleged illegal wiretapping and harassment of inmate dismissed where plaintiff suffered no physical harm, except pain to his hip). *Alexander v Tippah County, Mississippi*, 351 F. 3d 626(5th Cir. 2003), *cert. denied,* 541 U. S.1012, 124 S. Ct. 2071, 158 L. Ed. 2d 623(2004)(upheld dismissal of prisoners' complaint for 8th Amendment violations, where nausea and vomiting were the only injuries alleged).

The court's role is limited in reviewing the sufficiency of the pleadings. It does not serve the interest of any of the parties and would be a waste of scarce judicial resources not to recognize the obvious-- The plaintiffs cannot prove any connection between their alleged illnesses and the conditions to which they were subjected. Common colds and influenza are caused by viral agents. That is a matter of undisputed scientific fact that is commonly known even among ordinary lay people. That these illnesses are viral and not bacterial is properly subject to judicial notice. Rule 201(b) Federal Rules of Evidence. You do not catch a "cold"or "flu" from being exposed either to cold temperatures or to unsanitary conditions, but by being exposed to a virus. The most affluent, living in luxurious conditions, also contract colds and influenza.

Both because of the minimal nature of the injuries alleged and the obvious impossibility of connecting the injuries to the alleged conditions of confinement, the plaintiffs' complaint does not allege a physical injury sufficient to satisfy § 1997e(e). Therefore, it is recommended that all claims for compensatory damages be dismissed with prejudice.

The court must next consider whether any claim or controversy remains for decision. As noted above, the plaintiffs long ago voluntarily dismissed the claims for equitable relief. The plaintiffs have not requested nominal damages, but have included a request for punitive damages. If mere conclusory allegations are insufficient to state a claim under §1983(*Brinkmann v. Johnston*, 793 F.2d 111 (5th Cir. 1986), then this complaint is surely inadequate on the issue of punitive damages. To allow punitive damages, a defendant's conduct must be motivated by "evil intent" or demonstrate subjective "reckless or callous indifference" amounting to "criminal indifference to civil obligations." *Williams v. Kaufman County,* 352 F. 3d 994, 1015(Citing *Sockwell v. Phelps*, 20 F.3d 187, 192(5th Cir. 1994); *Smith v. Wade*, 461 U.S. 30, 37 n. 6, 41, 56, 103 S. Ct. 1625, 75 L Ed. 2d 632(1983) and *Kolstad v. Am Dental Ass'n*. 527 U.S. 526, 536, 119 S. Ct. 2118, 144 L. Ed.2d 494 (1999). The complaint has precisely one conclusory allegation potentially relating to the claim for punitive damages: that all of the defendants "acted with intent." The plaintiffs have now had the opportunity to complete discovery and been repeatedly ordered to allege what the defendants or any of them have done. Nothing in the complaint or pleadings makes the requisite allegations. This is insufficient to allege a claim against any defendant by any plaintiff for punitive damages.

The undersigned recommends that the complaint be dismissed with prejudice pursuant to 42 U.S.C. § 1997e(e).

<u>THIRD RECOMMENDATION</u>

Alternatively and additionally, the undersigned makes the following recommendations based upon the sufficiency of the pleadings.[3]  In reviewing the sufficiency of the pleadings there are three concerns. 1) Do the allegations of the complaint state a violation of constitutional magnitude cognizable under § 1983; 2) Have the *Wash* plaintiffs included sufficient factual allegations against some or all of the defendants to subject them to trial; and 3) Has Jimmy Powell stated sufficient factual allegations against some or all of the defendants to subject them to trial.

The court ordered the plaintiffs to individually respond to the immunity defense.  All responses in the file, regardless of whether they are in compliance with the court's order have been considered for the purposes of this report and recommendation. After carefully considering the contents of the <u>pro se</u> complaints and giving it the liberal construction required by <u>Haines v. Kerner</u>, 404 U.S. 519 (1972), this court has come to the following conclusions:

**DOES THE COMPLAINT STATE VIOLATIONS
OF A CONSTITUTIONAL MAGNITUDE?**

**COUNT I**

In count one of the second amended complaint the plaintiffs allege that they have had electric outlets removed from their cells in Unit 32, which they had formerly used for powering fans and other electric equipment.  The 'defendants'[4] decided for security reasons to remove the outlets.  The pleadings concede that there had been incidents of inmates heating water to scald other inmates and

---

[3] This analysis does not consider or dispose of the claimed qualified immunity defenses.  The undersigned on the present state of the record is unable to resolve this issue.

[4] The plaintiffs have consistently lumped all defendants together making no attempt to identify which defendants have personal involvement with their assorted complaints.

staff. Plaintiffs assert that the money order inmates had never been guilty of such actions and, therefore, there was no justification for removing their electric outlets. They also assert the death row inmates, who had been guilty of such misconduct, were allowed to retain their electric outlets. They allege this is a violation of their Eighth Amendment rights and Equal Protection rights. It is well-settled that the courts, unless presented with patently unreasonable conduct, are reluctant to interfere with the day-to-day operations of a prison. Bell v. Wolfish, 441 U.S. 520 (1979). A prison's internal security is peculiarly a matter normally left to the discretion of prison administrators. Rhodes v. Chapman, 452 U.S. 337, 349 n.14 (1981). Moreover, "prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Whitley v. Albers, 475 U.S. 312, 321-22 (1986) (quoting Bell v. Wolfish, 441 U.S. at 547). Here the plaintiffs have conceded the legitimacy of the security interests being served by the change instituted by the defendants. The courts should not interfere with that decision, nor should they mandate that a known security hazard be ignored until an inmate or guard is actually injured.

Additionally denial of access to electric power is not a violation of the inmates Eighth Amendment rights. The Constitution does not mandate comfortable prisons. Vega v. Parsley, 700 F.Supp. 879, 883 (W.D. Tex. 1988). The Eighth Amendment may afford protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience. Wilson v. Lynaugh, 878 F.2d 846, 849 (5th Cir. 1989). Inmates cannot expect the amenities, conveniences, and services of a good hotel. Wilson, 878 F.2d at 849 n.5 (citing Harris v. Fleming, 839 F.2d 1232, 1235-36 (7th Cir. 1988)). There is no constitutional right to access to electric power within the inmates' cells.

The plaintiffs complain that the decision is a violation of their rights under the Equal Protection Clause, since the outlets were not removed from the cells of death row inmates. The original complaint attaches correspondence from Larry Keys, W.L. Holman and Robert Armstrong concerning the decision to remove the electric outlets. It confirms that the outlets were not removed from the cells of death row inmates, though the decision extended to all other areas of Unit 32, not just those of the money order inmates. The Equal Protection Clause does not require absolute equality. Ross v. Moffitt, 417 U.S. 600, 612 (1974). To state that rights under the equal protection clause have been violated, petitioner must allege that the violation was based on an intentional discrimination. Lavernia v. Lynaugh, 845 F.2d 493, 496 (5th cir. 1988) (citing Washington v. Davis, 426 U.S. 229, 239 (1976)). The intentional discrimination "implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group." Id. (quoting Shango v. Jurich, 681 F.2d 1091, 1104 (7th Cir. 1982) (citing Personnel Administrator of Massachusetts v. Feeny, 442 U.S. 256 (1979)). The complaint does not allege that these plaintiffs are members of a protected class. If the conclusory allegations of this complaint state a cause of action against all of these defendants for violation of the Equal Protection clause, then every inmate and every identifiable group of inmates is entitled to sue if any other inmate or group of inmates is treated differently in any manner, no matter how trivial. The Equal Protection Clause, like the Eighth Amendment, does not require federal courts to micromanage state prisons. This portion of the complaint fails to state a claim under the Equal Protection Clause.

The balance of the First Count alleges inadequate ventilation and cooling in Unit 32. This states a claim for violation of Eighth Amendment rights. The removal of electric outlets may be admissible as evidence relating to the overall conditions relating to Unit 32's ventilation and heat levels.

## COUNT II

Count II alleges in essence that the "defendants" did not provide meaningful classifications hearings and thus violated the plaintiffs rights. The Fifth Circuit Court of Appeals considered these same allegations from one of these plaintiffs in *Phillips v Puckett,* 98-60010(5th Cir. 1999) and held that these allegations stated a claim under § 1983. [5]

## COUNT III

The third count alleges Eighth Amendment violations in holding the plaintiffs in isolation for a period of 8 years; failing to provide yard call for one year; and otherwise depriving the plaintiffs of appropriate access to exercise. This sets forth a claim for violation of the inmates' Eighth Amendment rights.

## COUNT IV

This count alleges that Unit 32 is too cold in the winter and unsanitary due to the plumbing problems. It also accuses the defendants of providing inadequate mental health care. It alleges that the cells in Unit 17 are cold, damp, ill lit, vermin infested and lack hot water in the cells. These allegations are sufficient to state Eight Amendment claims.

---

[5]

It would appear that Desmond Phillips, having already litigated these issues and lost is not a proper party plaintiff on this portion of the claim. Depending on the disposition of this report and recommendation that issue may be moot.

## COUNT V

Here the plaintiffs have actually named the defendant against whom they complain. They allege that Larry Hardy has violated state and federal law by providing inadequate administrative remedies to the plaintiffs.

> "Congress requires inmates to exhaust their "administrative remedies as are available..." 42 U.S.C. § 1997e(a). A prison system is not required to establish grievance procedures, and inmates do not have a basis for a lawsuit because a prison system has no established grievance procedures or fails to adhere to it. 42 U.S.C. 1997e(b). The Fifth Circuit has made it clear that inmates do not have a basis for a meritorious civil rights lawsuit just because they are unhappy with grievance procedures." *Bradford v. Kuykendall*, 2005 WL 1521016, 5(E. D. Tex.) citing *Geiger v. Gowers,* 404 F. 3d 371, 374(5th Cir. 2005).

This count is frivolous and should be dismissed with prejudice. Since these are the only complaints naming Larry Hardy, he should be finally dismissed from this action.

In summary, the undersigned finds that the portion of Count I referring to the decision to remove electric outlets from the cells and Count V fail to set forth claims of constitutional violations under § 1983 and should be dismissed with prejudice.

## HAVE THE *WASH* PLAINTIFFS MADE SUFFICIENT ALLEGATIONS AGAINST THE DEFENDANTS

The court has reviewed the record for allegations specific to each of the individual defendants, including any documents attached as exhibits to the complaints. The assorted replies and responses ordered in accordance with *Shultea* are devoid of factual allegations.[6] The complaints includes only blanket "the defendants" allegations, with the exception of naming Hardy on the ARP portion of the

---

[6]
The closest the *Wash* plaintiffs come to making any factual allegations is to allege that they have all suffered the same conditions and privations as a group (Doc 219).

complaint. The face of the pleadings makes it apparent that all defendants are not and cannot be personally involved in all of the complaints.[7] Larry Hardy is the only defendant whose name appears below the style of the case. The only other 'allegations' regarding the involvement of the defendants are Exhibits A-C attached to the original complaint. These documents mention of Robert Armstrong, Christopher Epps, W. L. Holman, Robert Johnson, Larry Keys, and J. J. Streeter but only relate to the decision to remove electric outlets. If the allegations regarding the removal of the power from the cells are found to be cognizable under § 1983, then these defendants should be subject to trial or other further proceedings. But in keeping with the above recommendation on Count I, the undersigned recommends that the claims of the *Wash* plaintiffs against Armstrong, Epps, Holman, Johnson, Keys, and Streeter be dismissed with prejudice.

The balance of the defendants, Glen Adams, James Anderson, Joe Connors, Gene Crocker, Frank Grammar, Maud Irby, Levon Jackson, Earl Jackson, Pamela Lee, Jacquilyn Maxwell, David McGee, Charles Thomas, Willie Walker, and Sam Webb are not tied factually to any of the alleged constitutional violations. The complaint as to the *Wash* plaintiffs should be dismissed with prejudice as to these defendants.

The remaining defendant Larry Hardy should be dismissed as set forth above because the defendants have no constitutional right to have grievances handled to their satisfaction.

The above recommended dismissals leave no defendants or triable issues as to the *Wash* plaintiffs, resulting in dismissal of this action with prejudice as to all plaintiffs other than Jimmy Powell.

---

[7] The complaint covers different conditions in different units, plus allegations regarding classification procedures.

## CLAIMS OF JIMMY POWELL

Jimmy Powell's individual response states what is arguably a claim for 8th Amendment violations against Glenn Adams, Robert Armstrong, Joe Connors, Gene Crocker, Christopher Epps, Frank Grammar, Maud Irby, Larry Keys, Levon Jackson, Earl Jackson, Robert Johnson, Pamela Lee, Jacquilyn Maxwell, Jessie Streeter, Charles Thomas, Willie Walker, and Sam Webb. Powell has not made mention of James Anderson, Larry Hardy, or W. L. Holman. These three defendants should be dismissed from this action for failure to state a cause of action. However, all of Powell's claims for monetary damages fail because of the lack of physical injury as discussed above.

While the undersigned recommends that this complaint be dismissed in its entirety, the plaintiffs remain class members in *Gates.* Litigation dedicated to protecting their interests and rights continues on the equitable claims. The dismissal of this action will not leave these plaintiffs and other prisoners bereft and without advocates. They are represented by attorneys from the National Prison Project and class counsel, working diligently to provide them with humane prison conditions consistent with" the evolving standards of decency that mark the progress of a maturing society." *Rhodes v. Chapman,* 452 U.S. 337, 69 L.Ed.2d 59 (1984).

The parties are referred to 28 U.S.C. 636(b)(1) and Local Rule 72.2(D) for the appropriate procedure in the event any party desires to file objections to these findings and recommendations. Objections are required to be in writing and must be filed within ten days of this date. Failure to file written objections to the proposed finding and recommendations contained in this report within ten days from the date of filing will bar an aggrieved party from challenging on appeal both the proposed factual findings and the proposed legal conclusions accepted by the district court *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

The plaintiffs are directed to acknowledge receipt of this report and recommendation by signing the enclosed acknowledgment form and returning it to the court within ten days of this date. Plaintiffs are warned that failure to comply with the requirements of this paragraph may lead to the dismissal of this lawsuit under F.R.Civ.P. 41(b) for failure to prosecute and for failure to comply with an order of the court.

This the 8th day of November, 2005.


/s/ JERRY A. DAVIS
UNITED STATES MAGISTRATE JUDGE